JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:26-cv-01282-DOC-JDE                    Date:  June 3, 2026

Title: Umaima Mehram et al v. ICU Medical Inc. et al

---

PRESENT: <u>THE HONORABLE DAVID O. CARTER, JUDGE</u>

| Priscilla Deason<br>for Karlen Dubon | Not Present |
|:---:|:---:|
| Courtroom Clerk | Court Reporter |
| ATTORNEYS PRESENT FOR<br>PLAINTIFF:<br>None Present | ATTORNEYS PRESENT FOR<br>DEFENDANT:<br>None Present |

---

**PROCEEDINGS (IN CHAMBERS):   ORDER REMANDING CASE TO**
**STATE COURT SUA SPONTE**

On the Court's own motion, the Court hereby **REMANDS** this case to the Superior Court of California, County of Orange.

**I.      Background**

This is a personal injury action. Plaintiff Umaima Mehram ("Umaima"), through her successor-in-interest, Selma Akthar; Selma Akthar, individually; and Kamran Mehram, individually (hereinafter, "Palintiffs") alleges that the Bivona Tracheostomy Tube, defectively manufactured and sold by ICU Medical Inc, ("Defendant"), was the direct cause of Umaima's pain, suffering, debility, and death on January 3, 2023. Complaint ("Compl.") (Dkt. 1-1) ¶ 31. On June 8, 2017, Plaintiff Selma Akthar gave birth to Plaintiff Umaima in the United Kingdom. *Id.* ¶ 16. Umaima was born with complex health conditions and required continuous long-term ventilation via a tracheostomy tube. *Id.* ¶ 18. Plaintiff was fitted with a Bivona Tracheostomy Tube, manufactured and distributed by Defendant via its subsidiary Smiths Medical. *Id.* ¶ 21. At all times Plaintiff alleges that they followed manufacture and medical staff instruction on cleaning Umaima's tracheostomy tubes. *Id.* ¶ 23.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:26-cv-01282-DOC-JDE                                      Date: June 3, 2026
                                                                     Page 2

On the morning of December 9, 2022, while Umaima slept downstairs and Selma Akthar was upstairs, the securement flange of Umaima's Bivona Tracheostomy Tube sheared and separated from the tracheostomy tube body. *Id.* ¶ 26. This caused Umaima's ventilation airway to dislodge, and Umaima began rapid onset of respiratory issues. *Id.* When Selma arrived at Umaima's bedside she was in cardiac arrest and Selma quickly re-secured the Bivona Device, restarted her ventilation, initiated CPR, and directed her family to call emergency services. *Id.* Due to the alleged defective Bivona Tracheostomy Tube's catastrophic failure and decannulation, Umaima consequently suffered a severe hypoxic ischemic brain injury. *Id.* ¶ 29. After multiple tests Umaima's doctors concluded that Umaima was clinically brain dead and died on January 3, 2023, after Umaima's organs began to shut down one by one. *Id.* ¶ 30.

Plaintiffs now bring claims of two forms of strict products liability (manufacturing defect and failure to warn), two forms of negligence (manufacturing defect and failure to warn), breach of implied and express warranty, wrongful death, and survival action. *See generally* Compl.

Plaintiff originally filed suit in the Superior Court of California, County of Orange, on May 7, 2026. Notice of Removal ("Not") (Dkt. 1) at 1. On May 15, 2026, Defendants ICU Medical, Inc. ("Defendant") removed the action to this Court, asserting diversity jurisdiction. Not at 2.

## II.   Legal Standard

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Removal of a case from state court to federal court is governed by 28 U.S.C. § 1441, which provides in relevant part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441. This statute "is strictly construed *against* removal jurisdiction," and the party seeking removal "bears the burden of establishing federal jurisdiction." *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988) (emphasis added) (citations omitted).

Federal diversity jurisdiction requires that the parties be citizens of different states and that the amount in controversy exceed $75,000. 28 U.S.C. § 1332(a). For diversity jurisdiction purposes, a corporation is "deemed to be a citizen of every State and foreign

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:26-cv-01282-DOC-JDE                                                    Date: June 3, 2026
                                                                                                          Page 3

state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The presence of any single plaintiff from the same state as any single defendant destroys "complete diversity" and strips the federal courts of original jurisdiction over the matter. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005).

Generally, a removing defendant must prove by a preponderance of the evidence that the amount in controversy satisfies the jurisdictional threshold. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2008). If the complaint affirmatively alleges an amount in controversy greater than $75,000, the jurisdictional requirement is "presumptively satisfied." *Id.* In that situation, a plaintiff who then tries to defeat removal must prove to a "legal certainty" that a recovery of more than $75,000 is impossible. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *Crum v. Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000). This framework applies equally to situations where the complaint leaves the amount in controversy unclear or ambiguous. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996).

A removing defendant "may not meet [its] burden by simply reciting some 'magical incantation' to the effect that 'the matter in controversy exceeds the sum of [$75,000],' but instead, must set forth in the removal petition the underlying facts supporting its assertion that the amount in controversy exceeds [$75,000]." *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 1995) (quoting *Gaus*, 980 F.2d at 567). If the plaintiff has not clearly or unambiguously alleged $75,000 in its complaint or has affirmatively alleged an amount *less* than $75,000 in its complaint, the burden lies with the defendant to show by a preponderance of the evidence that the jurisdictional minimum is satisfied. *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010); *Guglielmino*, 506 F.3d at 699. Conclusory allegations in regard to the amount in controversy are insufficient to establish diversity jurisdiction. *Matheson v. Progressive Speciaty Ins. Co.*, 319 F.3d 1089, 1090-91 (9th Cir. 2003).

While the defendant must "set forth the *underlying facts* supporting its assertion that the amount in controversy exceeds the statutory minimum," the standard is not so taxing so as to require the defendant to "research, state, and *prove* the plaintiff's claims for damages." *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) (emphases added). In short, the defendant must show that it is "more likely than not" that the amount in controversy exceeds the statutory minimum. *Id.* Summary

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:26-cv-01282-DOC-JDE                                    Date: June 3, 2026
                                                                 Page 4

judgment-type evidence may be used to substantiate this showing. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090–91 (9th Cir. 2003); *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). For example, defendants may make mathematical calculations using reasonable averages of hourly, monthly, and annual incomes of comparable employees when assessing the amount in controversy in a wrongful termination suit. *Coleman*, 730 F. Supp. 2d. at 1148–49.

If the court lacks subject matter jurisdiction, any action it takes is ultra vires and void. *See Gonzalez v. Crosby*, 545 U.S. 524, 534 (2005); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 101–02 (1998). The lack of subject matter jurisdiction may be raised at any time by either the parties or the court. Fed. R. Civ. P. 12(h)(3). If subject matter jurisdiction is found to be lacking, the court must dismiss the action, *id.*, or remand pursuant to 28 U.S.C. § 1447(c). A court may raise the question of subject matter jurisdiction *sua sponte*. *See Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002).

## III.   Discussion

Defendant argues that this Court has diversity jurisdiction in this action. Not. at 2. The Court disagrees.

Defendants claim that "Plaintiffs' allegations and the relief they seek conclusively demonstrate that the amount in controversy exceeds $75,000." Not. at 4. Defendants also cite to paragraphs 1-4 and 62-140 of the Complaint in support of this claim. *Id.* However, nowhere in the Complaint does it demand a specific amount of damages or otherwise indicate that Plaintiff is seeking more than $75,000. *See generally* Compl. Simply, Defendant has not met its burden to show that the amount in controversy requirement is satisfied.

Defendant does not provide any concrete facts showing that Plaintiff's alleged injuries might result in damages over $75,000. Defendant recites the extent of Plaintiff's injuries, Not. at 4, but does not connect these alleged injuries to any specific amount of damages. While Plaintiff *might* have suffered injuries warranting an amount over $75,000, the record before the Court today does not support that. *See Matheson*, 319 F.3d at 1090-91 ("Conclusory allegations as to the amount in controversy are insufficient."). Furthermore, this Court does not include speculative damages, such as attorneys' fees or emotional distress damages, when calculating the amount in controversy. *See Traxler*, 596 F.3d at 1011; *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:26-cv-01282-DOC-JDE                                   Date: June 3, 2026
                                                                                    Page 5

controversy."). Because Defendant has not satisfied their burden to show that more than $75,000 is at issue in this case, the Court lacks diversity jurisdiction.

The Court's decision here is reinforced by the fact that Congress has not raised the amount in controversy since 1996—nearly three decades ago.[1] *See* The Federal Courts Improvement Act of 1996, 110 Stat. 3850. Since then, the inflation rate is nearly 100% (*i.e.*, prices have almost doubled). Thus, adjusted for inflation, the amount in controversy should be around $150,000. Stated conversely, a case worth $75,000 in 1996 is worth only $37,500 in today's dollars. Because inflation has plainly decreased the "real" value of the amount in controversy, more and more cases are able to meet the jurisdictional threshold and can be brought in federal court. As federal diversity jurisdiction expands, state court jurisdiction to decide purely state law issues and develop state law correspondingly decreases. Thus, the federal jurisdictional creep is incompatible with the most basic principles of federalism.

Federalism is not the only loser in Congress's failure to increase the amount in controversy. When a case is improperly removed, as happened here, ultimate resolution is delayed. Moreover, if a court does not immediately remand a case sua sponte, a plaintiff may move to remand. Because cases subject to motion to remand are typically small dollar cases, this increased motion work can quickly cause attorneys' fees to outrun any potential recovery and places an immense burden on a plaintiff's lawyer working on contingency. In this respect, the current low jurisdictional threshold reduces access to justice. Therefore, the Court respectfully encourages Congress to reconsider the amount in controversy minimum.

## IV.    Disposition

For the reasons set forth above, the Court hereby **REMANDS** this case to the Superior Court of Orange County.

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                          Initials of Deputy Clerk: pd/kdu
CIVIL-GEN

---

[1] For reference, in 1996, the minimum wage was $4.75 per hour, and only 16% of Americans had cell phones. Indeed, the current amount-in-controversy is older than both of my law clerks.